Case No. 2110624 Virginia Colburn v. Mario Tricoci Hair Salons & Day Spas, a.k.a. the 10th athlete, arguing for the athlete, Mr. Robert Elisha, arguing for the athlete, Mr. Richard Burr. All right, Mr. Elisha. Thank you, Your Honor. May it please the Court, as you're aware, this was a refiled case, and in the first case, the plaintiff disclosed an expert on liability by the name of Natalia Dorn. In the refiled version of the case, we disclosed a medical expert on the issue of damages, Dr. Jeffrey Coe, and then we filed a motion to substitute Dr. Natalia Dorn. That motion was granted by Judge Ellsner on April 18th, and he gave the plaintiff until April 29th, 11 days, to disclose a new expert. The plaintiff disclosed Pamela Stiver with a cover letter, a qualifications page, page 117 of the record, and a one-page opinion on page 118 of the record. The qualifications are spelled out on page 117, and Judge Ellsner had that information all before him. Now, you contend that Judge Ellsner barred Pamela Stiver from testifying because she was licensed or educated in 2006, that is, two years after the incident took place, and that it was somehow he felt that she was automatically disqualified for that reason? Yes. But didn't he, what in the court order leads you to believe that that's what he did? Didn't he point out that and say in the order, as the defendant points out, the affiant did not show that she has knowledge of the standard of care a professional esthetician with the same knowledge, ability, and skill would have used under similar circumstances in January 2004? He did use that language. However, that's not accurately reflected in the record and not supported by the record. How so? For example, in the record, Ms. Stiver had before her the Mario Tricosci's own policies and procedures, had Mario Tricosci's Mille Day, the treatise from the industry.  Those are in the record? Those are in her report. Those are in her report. They're not in the record, though. That's true. However, her opinion is based on those, and those are at the time. Also, Mario Tricosci's answers to interrogatories and the depositions of all the employees were before her and are referenced as things that she relied on in the report. I think where Judge Ellsner got off track a little bit is he indicated she wasn't qualified as an expert to render a standard of care as to this individual, personal expert. It's our position, first of all, that an esthetician is not a professional. It's not one of the professionals listed in the Abinant Cool Law. She's not covered by the Medical Practice Act. And this claim is pending against the salon, an institution, not against an individual professional. Now, you don't argue that in your opening brief? I do. I argue that, and that's why I use the Holt case. I never cite to a single Medical Professional Act case or a Professional Act case in my opening brief. That's why I use Holt, which has an ordinary duty of care, and it's an institutional. This is more akin to a hospital-type case or an HMO-type case. But isn't it Holt? In Holt, didn't the expert there testify that the document relied on was actually published in the year or before the year that the incident occurred? Whereas here, there is no similar testimony. There is. Their own policies and procedures, in effect, on the date were violated. Their own policies and procedures said, if there's redness or demarcation, services not to be given. And Ms. Stiger points that out. But she doesn't indicate when those were published, does she? And they're not in the record. She does not, but they're disclosed by the defendant in this case as the policies and procedures in effect at the time of this case. It's the defendant's own discovery responses that she utilized. Is that why her letter or that document that you're talking about, the one page that was after her qualifications, has references to my personal opinion and the personal opinion of Pamela Stiger as opposed to my reasonable opinion as a professional? No. I think she was careless in the use of her language, and we had an 11-day short deadline. Well, I mean, if you're introducing her as a professional person, although not listed, as you've indicated, careless is one thing, but is she an expert, or was she being brought in as just a person who had some additional knowledge? The question in whole is whether she is in a field with a modicum of reliability. She is a licensed esthetician, so she is in that field. She's also disclosed her other qualifications, that she has medical background, she's been the medical director of a clinic. She listed all of her medications, that she's done these particular treatments with these particular facials. I mean, we believe she established her qualifications as an expert on the issue. True, she was not licensed in 2004, but her affidavit specifically states that the treatment provided on the 13th, the second facial, violated the standard of care on that date, not a later standard of care. Her affidavit in paragraph 8 says, in my professional opinion, when she returned for her second treatment on January 13th with demarcation from treatment on January 9th, she should have been refused any treatment and referred to a physician. This demarcation was described as painful, irritated, blotchy skin. Did she ever testify that the recommendations contained in either the manual, the Trococci manual, or the Milady's manual were the basis or were the standard of care in 2004? Did she ever state that in the affidavit or her letter? She does not, but we don't have a professional standard of care in this case. This is not a professional case. It isn't, but she's licensed, isn't she, as an esthetician? She is licensed as an esthetician. And doesn't, yes, she is licensed along with barbers and cosmetologists under the statute in Illinois, correct? Correct. And doesn't the public policy of that statute refer to the professions, said professions? Isn't that language in the public policy section of that statute under which she was licensed? It is. So you're contending she wasn't a professional? I'm not contending that. I'm contending she's an expert. I'm contending this is not a professional negligent standard of care. It's an ordinary standard of care. In this case, there are many licensed things in the state of Illinois. There's plumbers. There's lifeguards. There's all kinds of things. In Advencula, the court gives an exhaustive list of what they have found to be professions up to date. They include MDs, nurses, accountants, attorneys, podiatrists, architects, and dentists and nurses. There's no prior case that I can find in Illinois stating that an esthetician is a professional held to a professional standard of care. Anywhere. There's no such case. Well, then why would they be licensed? Just the state's ability to track to keep its tabs on tattoo artists are licensed. Do they have a professional standard of care? Well, if they get their license taken away, they cannot then do what they have done before, can they? That's true. And the state has the right to say, we're going to take this away from you. You're right to do this away from you. We're going to take your right to drive a car away from you. We're going to take your right to be a lifeguard away from you. That doesn't mean that there is a professional standard of care there. I'm sorry. Go ahead. Well, I was just going to ask, do they have to go to a training program to be licensed? Surely. Do they have to pass a test to be licensed? Yes. Then why have they not learned during the course of that certification process certain standards or professional standards that should be applied in their licensing? She has, and she has qualified for those things. This is a claim, though, against the institution. This is an institutional claim. It's a standard negligence claim, not a professional claim against an individual licensed esthetician. Well, doesn't Mario Tricosi employ licensed estheticians? They do. They do. Just as a hospital might employ a doctor or a nurse. There's a separate and distinct common law claim in addition to the individual professional claim. It's our position this is a claim against Mario Tricosi, not a claim against an individual in a professional capacity. And as a second argument, there is no, quote, separate professional capacity is our second argument. She has an ordinary negligence standard of care as a salon. Do you need an expert to make your case?  So, I mean, really, if this expert wasn't there, you could just go in and say, just tell people this is ordinary standard of care. You shouldn't have done this. Exactly. So, I mean. Just like in a slip and fall case, you might hire an expert to say this tile wasn't reasonably dangerous. You might in a hospital case where some institutional form of negligence was conducted, you might hire an expert just to make your case stronger. It's not a requirement. How would I know as a juror whether a seaweed facial should be followed by a vitamin C facial or what effect this has on skin? How would I know that as a juror without an expert? Number one, if your skin is red and blotchy, a reasonable layperson can determine if your skin is red and blotchy, to put a second treatment like the first onto the same thing would be contraindicated. I'm sorry. You said to put a second treatment onto the same area would be contraindicated. I mean, this is a second treatment being done four days later. Well, how would you know what to do then? I mean, vitamin C is supposedly, you know, in common knowledge good for everything. It also applies heat. It's a facial. It's a facial. A reasonable juror, given the instructions in this case, could decide on their own without an expert testifying to the standard of care. We've made it stronger by adding an expert testifying to the standard of care. Do you argue that in your brief that summary judgment was improper, even if the judge's motion to borrow, ruling on the motion to borrow, was correct, that summary judgment was improper because you don't need an expert? I believe I tried to. That's the whole way I structured the brief. For example, that's why I used hold. That's why I said there's other things that can create the standard of care, such as their own policies and procedures. That's why I specifically structured the brief the way it was. That aren't in the record? You said other things can establish the standard of care, but they're not in the record, are they, counsel? The actual language of Mario Tukoshi's own policy that was violated is in the record. It's contained in her opinion. But if we don't have her and you don't need her as a witness, how then will the jury know the standard of care? Because that policy will be introduced as a piece of evidence at the trial. All right. In your brief on page 11, your subtitle is called, Luke Stiver's Professional Opinion Establishes the Standard of Care. And, of course, we're told not to just look at titles. And then later in that paragraph, you say, Clearly here the jury is aided by a licensed esthetician's opinions that when a customer has redness or irritated and blotchy skin, it's reported that treatment should not be given. So which is it? Is she a professional or can this happen without her presence? I was using the Holt test. The first factor in the Holt test is, is she qualified as an expert in the field with a modicum of liability? Second, does her testimony aid the jury? I specifically mimicked the second-prong test of aiding the jury. Is it an and or an or in Holt? It's an and. All right. So what is her ñ when did she become a professional? Well, she became ñ When did she become a licensed esthetician? She became a licensed esthetician in 2006. But you're entitling her here a professional. So is that when she also became a professional? She calls herself personal. The title doesn't mean anything, and the word professional doesn't mean anything. The Holt does not require a, quote, professional. The question is, is she qualified to render an expert opinion in this case, which we believe she is. I don't think the word professional adds anything in this case. Whose burden was it to establish that this was an ordinary negligence case? Was it your burden? It was my burden. And that's what we've pledged from the very beginning in the complaint against the institution was ordinary negligence. All right. You'll have an opportunity for rebuttal. Thank you. Thank you. Good morning, Mr. Berglund. Good morning, Your Honor. May it please the Court? Fine. Counsel? For the defendant at belief, Mario Tricocci, Hair Salons and Day Spas, Incorporated, my name is Rich Berglund, and here with me today at counsel's table is Mr. Robert Mark Chemers. We're both of the law firm of Pretzel and Stouffer Chartered out of Chicago. I'd actually like to begin with a question that Judge Burke had for counsel, which is, how would I know if a C facial should be followed by a vitamin C facial without expert testimony? And the answer to that question is, Justice Burke, you would not know. And as Justice Dinoff also said, vitamin C is, in common knowledge, is pretty much good for everything. So how would the lay juror know that if somebody received a seaweed facial, came in with a red face, that vitamin C, a subsequent vitamin C facial, would not be helpful for their red and irritated skin? Would they know that because if there was a trial in this case, the Mario Tricocci manual, or it has a more appropriate name, I apologize, but would it somehow be introduced into evidence? Would the manual be introduced into evidence? I believe maybe that it would, but in this case, the summary judgment is ran in favor of the defendant here, and it was the plaintiff's burden to show some evidence, any evidence, that there was a question of fact as to all the elements. And so there was no page from the document in the record that the trial court could see? No, there was no page. There was just a snippet that was provided in the supposed expert Pamela Seavers' disclosure, and in her affidavit she follows it up with, I think, a reference to the snippet. But there was no actual page of this policy or even of the industry treaties attached to the response to the defendant's motion for summary judgment. And did you disclose the manual in discovery? Yes, we disclosed the manual in discovery, but that's also... Was it in specific response to a question as to what were the manuals or standards and procedures of this salon in 2004? I'm not entirely familiar with that because I was not trial counsel, so I can't frankly answer that question, but what I can say is that the policy was disclosed and it does not appear in the record. Therefore, I would argue that Your Honors can't use it as a basis for any of the plaintiff's arguments on appeal. Now, in your motion for summary judgment, I believe you argued that without the expert witness, Pamela Seavers, that the standard of care could not be shown and, therefore, an element of the plaintiff's case could not be proven. Right. That was, I guess, what's commonly referred to as a Celotex-type motion, correct? Yes, yes. But the Williams case indicates that that bare type of... You didn't have an affidavit attached. That bare type of assertion isn't sufficient to support a motion for summary judgment. How do you distinguish our case from the Williams case? Well, I would say here what's going to happen... Our argument is that this is a professional negligence case and, as you know, in professional negligence cases, an expert is required to establish a standard of care and a deviation from the standard of care. So without an expert, what's going to happen? This is going to go to trial, the plaintiff's going to have no testimony, and what's the judge going to direct the verdict in favor of the defendant? So what's the difference between this happening now at the summary judgment stage or later after the court's wasted its time and the parties have wasted their money going through a trial? Had discovery been completed in this case? Discovery had not been completed in this case, no. As you can tell by the plaintiff's attempt to disclose a new expert witness to establish a standard of care. Well, doesn't that make it like Williams then? Williams, the appellate court didn't think there had been enough time for the experts to be found and disclosed. Well, I don't believe Williams was a refiled case, as is this case. And this case was originally filed in 2005, I believe, non-suit in 2009. The plaintiff had this expert disclosed, Dr. Duran, I believe, or Duran, since apparently day one. And then all of a sudden in March or April of 2011, which is about 18 months after she refiled her case, now she's saying, oh, we don't have a standard of care expert anymore. And at that point, you're kind of going, well, why hasn't there been a deposition of your standard of care expert, either that was in the prior case or the refiled case? In 18 months you weren't able to secure an expert to testify to the standard of care or provide any evidence to the standard of care. You use the phrase, this is a professional standard of care, or there's a professional standard of care issue, whereas counsel is saying, no, this isn't a professional standard of care because it is against an institution rather than a licensed professional. Right. But it was the affidavit of Ms. Diver considered in that regard, or was it considered as a professional expert? I believe the affidavit was considered as part of the expert's disclosure, and the expert was being proffered as an expert, as a professional esthetician. I believe, to correct one thing really quickly, in my brief I had indicated that the trial court maybe did not consider the affidavit as part of the disclosure, but upon further review, the trial court clearly did. In my brief, it's like I didn't believe what I was reading, so I just assumed that the trial court did actually consider the affidavit for the disclosure. But, yes, that's exactly what happened here, and the court looked at everything, the initial disclosure and the subsequent affidavit, and said, you know, this is completely insufficient to establish that this woman is qualified to testify to the standard of care in 2004, or that there was a deviation from the standard of care at that time. And maybe, and I'll just ask my question again, because I probably confuse matters. Okay. Does Mario Tricosi consider this to be a matter of ordinary standard of care or professional standard of care? Oh, I'm sorry, absolutely a professional standard of care. So it's our position that this is a case of professional negligence, and that the plaintiff absolutely needs an expert to establish a standard of care, and that there's a deviation from the standard of care. And I believe I argued in my brief that the plaintiff has actually waived the fact that this is an ordinary negligence case, even though Mr. LeSean indicated that by his reliance on the Holt case that he was actually arguing that this was a case of ordinary negligence. Well, why didn't he just come out and say it? Why didn't he just say, listen, this is a case of ordinary negligence. We don't even need an expert. So it doesn't matter that this woman has been barred, that Pamela Stever has been barred from giving expert testimony, because it's not required. As you can tell from reading the briefs, all indications point to the fact that you need an expert to establish that there is a breach of the standard of care here. Absolutely. And the plaintiff failed to produce an expert, and summary judgment was granted in the defendant's favor, and I believe that was a proper ruling. Did the trial court need to decide whether it was an ordinary negligence case or professional negligence case before granting the motion for summary judgment? Yes, I believe so. And did it? I believe that it did. Implicitly. Oh, implicit, okay. Implicitly. It didn't come out. Judge Ellison didn't come out and say, this is a case of professional negligence. He just said, without an expert to establish the standard of care, implying that this is a professional negligence case, then the motion for summary judgment is granted in favor of the defendant. And then I think I wanted to clear up real quickly the standard of review in this case. I believe that the plaintiff kind of muddles it, and I think he maybe does so on purpose. There are actually two issues. One is the admission of evidence, which is for an abusive discretion, and two is the granting of a motion for summary judgment, which is de novo. And I think in the plaintiff's reply brief, he retreats from the fact that there are two issues and says, oh, no, there's just one. It's whether the granting of the motion for summary judgment was proper, trying to take advantage of the de novo standard of review. And as you know, an abusive discretion standard is much harder to prove, and it's a much tougher hurdle to jump. Is it your argument that this expert was not qualified simply because she was licensed after the fact? No, that in addition to the fact that all of her experience, her training, comes presumably after 2006, which is when she received her license. Also, you look at the disclosure and you look at the affidavit, and basically all she says is this. She says, you know, I'm licensed. I was licensed in 2006. I'm familiar with all these procedures. I read these things, and first of all, my personal opinion, you know, I wouldn't have done what the defendant did here. Oh, yeah, oh, wait, and second of all, let me submit this affidavit and say, no, now in my professional opinion, there was a breach of the standard of care at that time. But she never says, I read these policies. These policies established the standard of care in 2004. After reading these policies, I became knowledgeable and qualified to testify to the standard of care in 2004, and the defendant breached the standard of care in 2004. It was that easy, and that the plaintiff or that panelist didn't do that, I believe, showed Judge Elsner that she wasn't qualified to get an opinion. That's the standard of care in 2004. And that, you know, there was no abuse of discretion by the judge looking at that and saying, listen, you're not qualified. You need that for testimony. You said we can't consider the manual or the standards of the Milady's standards and procedures because they're not in the record. But if she relies on them as a, well, and maybe this is the catch, if she relies on them as a professional, can't this court ultimately or any court ultimately see those documents or rely on those documents because those are documents she relied on, as in the Wilson-Clark scenario? First of all, I don't believe the court can rely on that at all because they're nowhere in the record. And can you rely on Pamela Stieber's reliance on those manuals? I don't think you can because there's – she's barred as giving witness testimony by Judge Elsner. And you'd have to first, you know, find that Judge Elsner abused his discretion by finding that she was unqualified as a witness to give expert testimony. And then, I think only then could you reach maybe possibly those documents that she merely referred to and relied on. But even then, she never says that these policies were in effect at the time. They established the standard of care. And according to those policies, there was a breach of the standard of care or those policies made me knowledgeable of the standard of care in 2004 because I didn't receive my license until 2006. I didn't receive any of my training until, you know, well after this alleged incident occurred. So that's one of the differences between our case and the Hanlon case where that was done. Yes. Correct? Right. Well, and even in the Hanlon case, I believe that there was an expert that testified that said, I know these, you know, policies or these industry recommendations were published in 1981 and the incident happened in 1978. But after reading these policies that were, you know, the industry recommendations that were published in 1981, I believe that those reflect the basic knowledge, you know, that should have been employed in 1978. And that was perfectly fine. But Panelist Seabard didn't do that in this case. She did not say, and that's all she had to do, was just say, listen, Malady's and Tricocci's policies were in effect in 2004. They established standard of care in 2004. I read them. I became knowledgeable of that, of those standards, and then there was a breach. And that was not done in this case. We have no other questions if you want to summarize. I think you still have a few. I haven't heard it yet, but if you want to summarize, you can. It would just be, you know, repetition. First of all, just, you know, I really would stress that the standard of care in the first place, or standard of review in the first place is for abuse of discretion, that this is definitely a professional negligence case, that Judge Ellsner, you know, did not act beyond the bounds of, you know, reason or exceed the bounds of reason or act arbitrarily when he found that this witness, Panelist Seabard, was unqualified to give expert testimony. She was unqualified to give expert testimony to the standard of care in 2004 or that there was a deviation in 2004. And I believe without an expert witness that the granting of defendant's motion for summary judgment was proper. And for those reasons and the reasons stated in our brief, that's the court to affirm the circuit court's judgment. And if there are no other questions. While, Mr. Glacian, while I have Mr. Brooklyn up, I have one suggestion for both of you. Since you're disagreeing before us about what type of an event this is, is this professional, is this ordinary, a copy of the complaint by somebody would have been. I've got one. Well, I know we have one in the record, but, you know, attached in the brief for easy reference and would have been helpful. Okay. And, I mean, I can get it, but as I pick up this brief, as I pick up this brief, and as I pick up this one, I don't have any bleedings. And it would have been helpful. Thank you. Thank you. Mr. Glacian? Yes. First, we believe Judge Ellison did abuse his discretion in barring her. We timely identify her. And it's a very lenient standard as to what is qualified in a field with a modicum of reliability. She put forth her expert credentials that she does have a license, that she has experience using the applications. Under the whole standard, she should be qualified. Judge Ellison found, as a matter of law, no matter what, because she wasn't licensed on the date of the occurrence, and she was licensed later, she's not qualified. I'm barring her opinion. I'm sorry. I know I asked this earlier, but you've repeated something. What in his order specifically leads you to believe that he barred her from testifying because she was licensed in 2006? This incident occurred on January 13, 2004, more than two years prior to this person graduating from school. She was not licensed in 2004. She has license in the field. And then? Go ahead. What else? The opinions reached are based upon her schooling, training, licensing, and experience, all in this field, just later. All of the basis for her ability to give the opinion occurred more than two years after this incident. While her training was from the, you know, you don't get your license immediately. You have to go to school for a while. Her training was immediately after and up until her licensing, two years after. As the defendant points out, the defendant does not show she has knowledge of the standard of care at the time. That's not true. She had their own documents. She had the testimony from the witnesses at the time. She had information of the standard of care at that time. That does not, there's no basis in the record for his conclusion that she had absolutely no knowledge. She states in her affidavit, and the defendant did not take her deposition, by the way. She states in her affidavit that the standard of care on January 13, 2004, in paragraph 8, was to deny care. She also states in her affidavit in paragraph 9 that these policies also supported that the standard of care was, in fact, that when there was pain, redness, and irritated and blotchy skin present when she presented for treatment, she shouldn't have been treated on January 13, 2004. Her affidavit specifically states the standard of care on January 13, 2004, and she has to be given every reasonable inference on that. She states in the affidavit that is the standard of care on January 13, 2004. For Judge Ellsner to say, well, since she wasn't licensed at the time, she couldn't possibly know that, that's an abuse of his discretion. But doesn't Judge Ellsner, pardon me, also say, let's see, the affidavit does not show that she has knowledge of the standard of care a professional with the same knowledge, skill, and ability would have used under similar circumstances in 2004. And I believe that's not supported by the record, again, because she had the policies, she had the procedures, she had the national literature. When, this is a rhetorical question, when were the policies promulgated? You can't answer it now because it would be outside of the record, but that's an issue that I think is related in that sentence. But they were disclosed by the defendant in this case, in the original filing of the case, clear back before our expert ever even got her license. Well, maybe they were amended afterwards. I mean, the issue is, when were they promulgated? And we don't see anything in this record that indicates when. Clearly, they were provided by the defendant in discovery as the policies and procedures in effect at the time of this occurrence. They gave them to us as being such. Did they give them to the judge? They did not. Did you give them to the judge? I did not. And we don't have them. That's true, but giving the plaintiff the inference that these policies were in effect, and that they were provided by the defendant, and that they were in the course of discovery in this case, along with the depositions of the three estheticians, the deposition of the salon owner. Clearly, Ms. Stiver had all the information, as it existed in 2004, to render her opinions from. That's all I have, unless there's any further questions. Thank you very much. Thank you. All right, we will take this case under advisement. We will issue a decision in due course. Thank you, counsel, for the argument, and we will stand in a brief recess. Thank you.